# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| DWAYNE ROBISON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 4:19CV1870 DDN |
| KAY MCINTYRE, et al., | ) ) ) |
| Defendants. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court upon the motion of *pro se* plaintiff Dwayne Robison for leave to commence this action without prepayment of the required filing fee. Having reviewed the motion and the financial information submitted in support, the Court will grant the motion, and assess an initial partial filing fee of $3.33. *See* 28 U.S.C. § 1915(b)(1). Furthermore, after reviewing the complaint, the Court will dismiss this case without prejudice. *See* 28 U.S.C. § 1915(e)(2).

### Initial Partial Filing Fee

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

In support of the instant motion, plaintiff submitted an inmate account statement showing average monthly deposits of $16.67. The Court finds that plaintiff has insufficient funds in his prison account to pay the entire fee and will therefore assess an initial partial filing fee of $3.33, which is twenty percent of plaintiff's average monthly deposit.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, is malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

Section 1915(e)(2) also allows this Court to dismiss a duplicative complaint that raises issues that are directly related to issues in another pending action brought by the same party. *Aziz v. Burrows*, 976 F.2d 1158 (8th Cir. 1992). An action is duplicative if the parties, issues, and available relief do not significantly differ between two actions. *I.A. Durbin, Inc. v. Jefferson Nat. Bank*, 793 F.2d 1541, 1551 (11th Cir.1986).

When reviewing a *pro se* complaint under 28 U.S.C. § 1915, the Court accepts the well-plead facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even *pro se* complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the *pro se* plaintiff that assumed facts that had not been pleaded).

**The Complaint**

Plaintiff is currently an inmate at the Eastern Reception, Diagnostic and Correctional Center, but the events described in the complaint occurred while he was incarcerated at the Farmington Correctional Center ("FCC"). He brings this action pursuant to 42 U.S.C. § 1983 against Kay McIntyre, Karen Salesmen, and Elizabeth Atterberry. Plaintiff sues McIntyre in both her official and individual capacities, Salesmen in her official capacity only, and he does not specify capacity for his claims against Atterberry.

Plaintiff's complaint is difficult to read and understand. From what the Court can discern, plaintiff has two main complaints: (1) that he was not receiving the mental health treatment and medications that he wanted and needed at FCC; and (2) that he was assigned and restricted to a single-man cell when he wanted to be in a double man cell. Plaintiff alleges that the single-man cell restriction is actually discrimination and punishment for being transgender.

As to defendant Karen Salesmen, a Qualified Mental Health Professional ("QMHP") at FCC, plaintiff asserts that she responded to many of his grievance filings with false information,

that she would not let him change mental health counselors at FCC, and that she made discriminatory remarks about him to other FCC staff members. Plaintiff complains that defendant Elizabeth Atterberry – who plaintiff describes as the Regional Director of Mental Health – allowed the FCC mental health providers to refuse him medication. As for defendant Kay McIntyre, another mental health professional at FCC, plaintiff alleges that she made discriminatory remarks about him because she is "hateful" towards people who are transgender and homosexual. ECF No. 1 at 5. Plaintiff asserts that McIntyre told him that he did not have mental health problems, she did not provide him with proper mental health treatment, and she took him off his mental health medication. In addition, plaintiff claims that McIntyre uses "suicide cells for punishment." *Id.* at 7.

Plaintiff attached to the complaint copies of the Informal Resolution Requests ("IRR"), Grievances, Grievance Appeals, and institutional responses regarding his two claims. ECF No. 1-3. In Complaint No. FCC 19-506, plaintiff complained about being placed on "cell alone status" while in administrative segregation, and he requested to have a cell mate. Defendant Salesmen responded to plaintiff's IRR and denied it as a duplicative complaint. ECF No. 1-3 at 1-2. Subsequently, Lisa Sanderson (FCC Chief of Mental Health Services and not a defendant in this suit) responded to plaintiff's grievance on this claim. Sanderson reviewed plaintiff's past housing assignments, past complaints he made to mental health providers about problems with cell mates, and past complaints about staff members not keeping him safe from other inmates. Sanderson noted that in consideration of plaintiff's "history of mental health issues, suicide attempts, self reported sexual activities, and safety and security concerns," the FCC staff decided it was in plaintiff's "best interest and for [his] own safety and security" that he remain in a single-man cell. *Id.* at 3. Sanderson denied plaintiff's grievance, finding that the mental health staff had followed established Department of Corrections policy and had acted in his best

interest. Finally, plaintiff's appeal of Sanderson's decision was denied. The response upholding the decision that plaintiff should remain in a single-man cell was reviewed and signed by defendant Atterberry. *Id.* at 5.

In Complaint No. FCC 19-351, plaintiff complained about the mental health treatment he was receiving at FCC. In his IRR, plaintiff requested both to "stop all mental health treatment and chronic care" but also for "the proper mental health care or treatment." ECF No. 1-3 at 8. Defendant McIntyre responded to plaintiff's IRR and stated that plaintiff was receiving all mental health services per protocols and that was he being seen by his assigned QMHP on a regular basis. *Id.* at 7. Sanderson responded to plaintiff's grievance on this issue by listing the three dates that plaintiff had been seen by a psychiatrist and the thirty dates he had been seen by a QMHP, over his approximate seven months at FCC. *Id.* at 9. Sanderson again denied plaintiff's grievance, finding that policies had been followed and that staff had acted in plaintiff's best interest. Finally, plaintiff's appeal of Sanderson's decision was denied. The response upholding the decision that plaintiff had received appropriate care and treatment was reviewed and signed by defendant Atterberry. *Id.* at 11.

Plaintiff states that he suffers from difficulty breathing, pain, COPD, and sleeping problems. For relief, plaintiff seeks money damages and to be put back on an unspecified mental health medication.

**Background**

This case is one of twelve civil actions plaintiff has filed in this Court *pro se* and *in forma pauperis* since May 2, 2019. One action, filed two months before this matter, named three defendants in the initial complaint: Lisa Sanderson, Elizabeth Atterberry, and Kay McIntyre. *See Robison v. Sanderson*, No. 4:19-CV-1182 (E.D. Mo. May 2, 2019) (hereafter "*Robison I*"). In the initial filing, plaintiff alleged that Sanderson punished him for being transgender by isolating

him to a single-man cell and that she has refused him mental health medication. As for defendant McIntyre, plaintiff alleged that she discriminated against him, slandered his name, and refused him a cell mate. Plaintiff made no allegations against Atterberry. Upon initial review under 28 U.S.C. § 1915(e)(2), the Court found plaintiff's initial complaint defective and subject to dismissal but directed plaintiff to file an amended complaint. *Robison I*, ECF No. 14.

Plaintiff filed an amended complaint in *Robison I* on September 23, 2019, in which he named five defendants including Kay McIntyre and Karen Salesmen[1] (but not Elizabeth Atterberry). *Robison I*, ECF No. 15. The amended complaint in that matter has not yet been re-reviewed under 28 U.S.C. § 1915(e)(2) by the Court. However, in that amended complaint, plaintiff asserts that the defendants harassed him for being transgender and retaliated against him by improperly processing his grievances and denying him a cell mate. Plaintiff alleges that McIntyre made slandering statements about homosexuals, that she hated transgender people, that she used suicide cells as punishment, and that she accused him of wanting a double-man cell so that he could have sex. *Id.*

## Discussion

The complaint in this matter does not survive initial review under 28 U.S.C. § 1915(e)(2). Generally, the Court finds this case subject to dismissal for being duplicative of the claims pending in *Robison I*. In the interest of conservation of judicial resources, all claims against the same defendants, relating to the same issues, should be brought in one matter. Furthermore, plaintiff fails to state valid official capacity claims against any defendant. Finally, to the extent that plaintiff makes a denial of medical care claim here that was not specifically raised in the amended complaint in *Robison I*, this claim is subject to dismissal for failure to state a claim.

---

[1] The Court notes that defendant Karen Salesmen is named as "Karen Salemen" in the amended complaint in *Robison I* but the Court believes based on the allegations, that this is a misspelling and these are in fact the same defendant.

### A. Duplicative Litigation

Having carefully reviewed and liberally construed the complaint, the Court concludes that the parties, issues, and available relief do not significantly differ between the instant case and *Robison I*. *See I.A. Durbin, Inc.*, 793 F.2d at 1551 (general rule for determining duplicative litigation is whether parties, issues, and available relief do not significantly differ between two actions).

The Court finds that all of the issues raised here are the same or directly related to the issues in *Robison I*. Plaintiff's claims regarding transgender harassment and retaliation are the same allegations raised in *Robison I*. These claims are based on the same set of facts and are clearly duplicative. Although plaintiff does not appear to directly re-raise his claim of inadequate mental health treatment and medication in his amended complaint in *Robison I* (as he did in his initial complaint in that matter), the relevant defendants are all part of the mental health staff at FCC and the claim is related to the basis for his retaliation argument in *Robison I*. The claims raised in this suit can and should be addressed in *Robison I*. The Court therefore concludes that the complaint here is subject to dismissal because it is duplicative of *Robison I*. *See Aziz v. Burrows*, 976 F.2d 1158 (8th Cir. 1992) (Under § 1915(e)(2), the Court may dismiss a duplicative complaint that raises issues that are directly related to issues in another pending action brought by the same party).

### B. Official Capacity Claims

Furthermore, plaintiff's claims brought against all defendants in their official capacities are subject to dismissal for failure to state a claim. Defendants Salesmen and Atterberry are sued solely in their official capacities; McIntyre is sued in both her individual and official capacities.[2]

---

[2] Plaintiff has specifically indicated that he is suing Salesmen and McIntyre in their official capacities. He does not indicate the capacity in which he is suing defendant Atterberry. However, if a plaintiff's complaint is silent about the capacity in which the defendant is being sued, the complaint is interpreted as including only official capacity

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

In order to prevail on an official capacity claim, plaintiff must establish the governmental entity's liability for the alleged conduct. *See Kelly*, 813 F.3d at 1075. Here, plaintiff makes no attempt to allege facts supporting such liability and therefore has failed to state a claim against any of the defendants in their official capacities.

**C. Failure to State a Claim**

Finally, even if plaintiff's denial of mental health treatment and medication claim was not directly duplicative of a claim raised in the *Robison I* amended complaint, this claim is subject to dismissal for failure to state a claim upon which relief may be granted. In the instant complaint, plaintiff alleges that he did not receive the mental health treatment and medication that he needed while incarcerated at FCC. Plaintiff never specified what treatment was lacking or what

---

claims. *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007). *See also Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity").

medication he thought he should be prescribed. In fact, in his IRR on the matter, he requests the "proper" mental health treatment while also requesting to "stop" all mental health treatment. ECF No. 1-3 at 8.

In order to state a claim for inadequate medical care under the Eighth or Fourteenth Amendment, a prisoner or detainee must plead facts sufficient to indicate a deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995). A claim of deliberate indifference involves both an objective and a subjective component. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citations omitted). The plaintiff must demonstrate (1) that he suffered an objectively serious medical need, and (2) the defendant actually knew of but deliberately disregarded that need. *Id.* A "serious medical need" is "one that has been diagnosed by a physician requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (quoted case omitted).

Deliberate indifference may be found when prison officials intentionally deny or delay access to medical care. *Estelle,* 429 U.S. at 104–05. Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Id.* at 106. Nor will a prisoner's "mere disagreement with treatment decisions" support a claim of deliberate indifference to a prisoner's serious medical needs. *Jones v. Minnesota Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008). While inmates have a right to adequate medical care, they have no "right to receive a particular or requested course of treatment." *Dulany*, 132 F.3d at 1239.

Even assuming plaintiff here had an objectively serious mental health medical need, the allegations of the complaint do not establish that any named defendant was deliberately indifferent to that need. Plaintiff sets forth his claims in a vague and conclusory manner instead

of alleging facts permitting the inference that any defendant violated his rights. Based on Sanderson's response to plaintiff's grievance on this issue, medical records indicate that plaintiff was seen by a member of the FCC mental health staff over thirty times in a seven-month period. *See* ECF No. 1-3 at 9. Clearly, plaintiff was not being denied mental health treatment. Plaintiff's disagreement with the mental health treatment he was receiving does not support a deliberate indifference claim. Plaintiff has no right to a requested course of treatment. Plaintiff's conclusory statement that he did not receive the proper mental health treatment and medications at FCC are insufficient to state a claim for relief.

After carefully reading and liberally construing the complaint, the Court concludes that it is subject to dismissal for being duplicative of other pending litigation, for failure to state any valid official capacity claims, and for failure to state a deliberate indifference medical care claim. For all of these reasons, the Court will therefore dismiss this case pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**Motion to Modify Claim**

On September 23, 2019, plaintiff filed a motion asking the Court "to reduce" his claim and stating that he is "willing to settle out [of] court right now" for a Court Order directing the "restart" of his mental health medication and for the amount of $410.00. ECF No. 8. The Court construes this motion as a request to amend the relief sought in plaintiff's complaint. However, because the Court finds the complaint subject to dismissal, this motion will be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's application to proceed *in forma pauperis* [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $3.33 within **twenty-one (21) days** of the date of this Order. Plaintiff is instructed to make his remittance

payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that that this case is **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 4] is **DENIED as moot**.

**IT IS FURTHER ORDERED** that plaintiff's motion to modify his claim [ECF No. 8] is **DENIED as moot**.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Opinion, Memorandum and Order.

Dated this 9th day of October, 2019.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE